Argued and submitted June 16, 1982, affirmed April 27, 1983

In the Matter of N.M., a child.
STATE ex rel JUVENILE DEPARTMENT
OF LANE COUNTY et al,
*Appellants,*
*v.*
M.M. and J.M.,
*Respondents.*
(79-320; CA A22474)
662 P2d 733

Jonathan H. Fussner, Assistant District Attorney, Eugene, argued the cause for appellant State of Oregon. With him on the brief was William Furtick, Eugene.

William Furtick, Eugene, argued the cause for appellant N. M.

James Hoffman, Eugene, argued the cause and filed the brief for respondent M. M.

Stephen Giardini, Eugene, argued the cause and filed the brief for respondent J. M.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

The state and the child appeal from a juvenile court order dismissing, for lack of proof, the state's petition to place the child within the court's jurisdiction. We affirm.

The child was originally found to be within the juvenile court's jurisdiction in June, 1979. She has been in foster care since November, 1979, and in May, 1980, was made a ward of the court and committed to the custody of Children's Services Division (CSD). She continues in CSD custody. At the time of this appeal, the most recent review order had been entered in September, 1981.

In October and November, 1980, the state filed three separate petitions alleging that the child and two of her siblings were within the juvenile court's jurisdiction, based in part on incidents in which the child and an older sister had been subjected to sexual contact by the child's father. The child testified to the alleged sexual contact at the factfinding hearing regarding the petitions filed on behalf of her two siblings.[1] As a result of her testimony, the referee found that she had been subjected to sexual contact by her father in September, 1980.

In anticipation of the upcoming hearing on her petition, the child filed a motion for a referee's order that the allegations of sexual conduct previously proven in the siblings' cases would be deemed proven in her case. On January 22, 1981, the referee entered such an order, which in addition limited the evidence that could be presented at the hearing on the child's petition to that which was unavailable or unknown at the siblings' hearing. No party sought rehearing of that order or review in this court. At the referee's hearing on the child's petition, the parties presented no evidence except the prior findings of fact regarding the sexual contact and the January 22 order making it of record in the child's case. On the basis of this finding, on April 8, 1981, the referee found the child to be within the juvenile court's jurisdiction.

Father timely requested a rehearing of the April 8 order before a juvenile court judge, as provided in ORS

---

[1] The state moved at the hearing to consolidate the child's petition also, but the motion was denied.

419.581(7). The judge ordered, over the state's objection, that the rehearing was to be *de novo,* including the factfinding made of record by the January 22 order, because that order was merely interlocutory and, therefore, not binding. On rehearing, the state offered only the referee's January 22 order and the finding of fact regarding the sexual contact. In keeping with his order, the judge did not admit them and dismissed the petition for lack of proof. The state argues that the court erred in refusing to be bound by the referee's January 22 order. We affirm. The trial judge was not bound.

ORS 419.581 prescribes the circumstances under which juvenile referees may hear cases, the effect of their orders and the rights of those involved to *de novo* rehearing by a juvenile court judge. It provides, in part:

"* * * * *

"(2)   The judge may direct that any case, or all cases of a class designated by the judge, shall be processed or heard in the first instance by a referee in the manner provided for the hearing of cases by the court. Upon conclusion of the hearing in each case the referee shall transmit to the judge the findings, recommendations or order in writing of the referee.

"(3)   Where the referee conducts a hearing, the child, the parent, guardian or other person appearing in behalf of the child and the petitioner, shall be notified of the referee's findings, recommendations or order, together with a notice to the effect that a rehearing shall be had before a judge if requested within 10 days. A rehearing before a judge of the juvenile court may be determined on the same evidence introduced before the referee if a stenographic transcript of the proceedings was kept; but, in any case, additional evidence may be presented.

"(4)   All orders of a referee shall become immediately effective, subject to the right of review provided in this section, and shall continue in full force and effect until vacated or modified upon rehearing by order of a judge of the juvenile court. Any order entered by a referee shall become a final order of the juvenile court upon expiration of 10 days following its entry, unless a rehearing is ordered or requested.

"* * * * *

"(6)   A judge of the juvenile court may, on own motion, order a rehearing of any matter heard before a referee.

"(7)   At any time prior to the expiration of 10 days after notice of the order and findings of a referee, a child, his parent, guardian or other person appearing on his behalf or the petitioner may apply to the juvenile court for a rehearing. The application may be directed to all or to any specified part of the order or findings.

"(8)   All rehearings of matters heard before a referee shall be before a judge of the juvenile court and shall be conducted de novo."

The state contends that, under subsection (4), the referee's January 22 order making the factfinding of record in the child's case was binding on the juvenile court judge on rehearing. That order, however, clearly anticipates a subsequent factfinding hearing to dispose finally of the state's petition.[2] Unless subsection (4) somehow changes the character of the order, it was interlocutory, not final. *See State ex rel Juv. Dept. v. Gates,* 46 Or App 587, 612 P2d 734, *rev den* 289 Or 587 (1980). Rehearing *de novo* by the juvenile court as to the factfinding incorporated by the order was authorized after the referee's April 8 order, ORS 419.581(8), and appeal to this court was not available until a final disposition was made of the case. ORS 419.561(1); *see, e.g., State ex rel Juv. Dept., v. Gates, supra.* The state argues that, regardless of the nature of a referee's order, subsection (4) renders it a "final order of the juvenile court" unless rehearing is ordered or requested within ten days of its entry. It is the state's contention that (1) because rehearing was not sought within ten days of its entry, the juvenile court judge was bound by it when he reheard the case after the referee's final disposition;

---

[2] The order stated, in part:

"IT IS FURTHER ORDERED that the following finding be made of record herein as the Court's finding as to Paragraph 6A of the Petition filed November 20, 1980:

"Said child was subjected to sexual contact by said child's father, [J.M.], while on a visitation to the family home, on or about September 29, 1980.

"and

"IT IS FURTHER ORDERED that in any Fact Finding Hearing on the Petition filed November 20, 1980 evidence presented shall be limited to that unknown or unavailble to the parties on November 25, 1980.

"DATED this 22 day of January, 1981."

and (2) the January 22 order was appealable to this court within 30 days under ORS 419.561. The state's major premise is incorrect; *i.e.*, that the January 22 order was a "final" appealable order within the meaning of the statute.

Our reading of ORS 419.581 in its entirety convinces us that subsection (4) was not meant to have the effect the state suggests. The statute contemplates rehearing when the case before the referee is completed. For example, subsection (7) allows designated persons to apply for rehearing after notice of "the order and findings of a referee." An "order and findings" are typically entered at the conclusion of proceedings in the case and not with each supervisory order in the interim. Also, subsection (3) provides that when a referee conducts a hearing, the parties shall be notified of the referee's findings, recommendations or order, together with a notice that rehearing shall be had before a judge if requested within ten days. Although not controlling in determining the nature of the order here, it is significant that the January 22 order did not contain the required notice.

In addition, ORS 419.581 attempts to confer on the juvenile court judge as much supervisory authority over a referee as he wishes to assume. Subsection (6) provides that a juvenile court judge may, on his own motion, order rehearing of any matter heard before a referee. Subsection (2) facilitates exercise of this authority by requiring the referee to transmit to the judge a written copy of his findings, recommendations or order "[u]pon conclusion of the hearing in each case." If no party seeks rehearing in the interim, the judge will be unaware of any interlocutory orders until the conclusion of the proceedings before the referee. To hold that the judge is at that point bound by the referee's interlocutory orders would interfere with the supervisory authority the legislature sought to confer. Although all of the referee's orders are immediately effective and bind the parties unless later vacated or modified, ORS 419.581(4), they do not bind the juvenile court judge until he has had an opportunity to review them and, if desired, to rehear the case.

Under the statutory scheme, if rehearing is not sought or ordered, the referee's order *disposing of the case*

becomes a final order of the juvenile court and is appealable to this court under ORS 419.561(1), providing the other requirements of that statute are met. Accordingly, we hold that ORS 419.581(4)' making the referee's orders "final" was not intended to bind the trial court, or this court, to the referee's interlocutory order of January 22.[3]

Affirmed.

---

[3] The state also argues that collateral estoppel bars relitigation of the finding of sexual contact in the child's case, because that fact had already been found in one of her siblings' cases. However, the referee dismissed the state's petition as to that sibling despite the finding of sexual contact, so, in effect, the parents "won." They had no reason to seek rehearing in the juvenile court or review in this court. Under these circumstances, it was not error to refuse to apply collateral estoppel against the parents in the child's case. *See Bahler v. Fletcher,* 257 Or 1, 10-11, 474 P2d 329 (1970).